IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
*Aug 31, 2016*
SUE BEITIA, CLERK

| | |
|---|---|
| RONALD FORD,<br><br>        Plaintiff,<br><br>  vs.<br><br>STATE FARM MUTUAL<br>AUTOMOBILE INSURANCE<br>COMPANY; BRENT WALTER, and<br>DOE DEFENDANTS 1-100,<br><br>        Defendants. | Civil No. 16-00220 JMS-KJM<br><br>FINDINGS AND<br>RECOMMENDATION TO GRANT<br>PLAINTIFF RONALD FORD'S<br>MOTION TO DECLINE<br>JURISDICTION AND REMAND<br>PROCEEDINGS |

## FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF RONALD FORD'S MOTION TO DECLINE JURISDICTION AND REMAND PROCEEDINGS

Plaintiff Ronald Ford ("Plaintiff") filed a Motion to Decline

Jurisdiction and Remand Proceedings on June 2, 2016 ("Motion").  *See* ECF No.

11.  Defendant State Farm Mutual Automobile Insurance Company ("State Farm")

filed its Opposition on July 6, 2016.  *See* ECF No. 15.  Plaintiff filed his Reply on

July 13, 2016.  *See* ECF No. 16.  The Court held a hearing on the Motion on July

27, 2016.  *See* ECF No. 17.  Bert S. Sakuda, Esq. appeared on behalf of Plaintiff.

*Id*.  Richard B. Miller, Esq. appeared on behalf of State Farm.  *Id*.

After careful consideration of the Motion, the parties' supporting and

opposing memoranda, the arguments of the parties' counsel, and the record

established in this action, the Court FINDS and RECOMMENDS that the district court GRANT the Motion.

BACKGROUND

On March 15, 2016, Plaintiff filed a personal injury action against Brent Walter in the Circuit Court of the Third Circuit State of Hawai'i ("state court").  *See* ECF No. 15-2.  On April 5, 2016, Plaintiff filed a separate Complaint for Declaratory Judgment against State Farm and Mr. Walter ("Complaint"), also in state court.  In the Complaint, Plaintiff alleges that on or around December 2, 2015, Plaintiff suffered serious and permanent injuries, economic loss, and property damage when Mr. Walter's vehicle struck the rear of Plaintiff's Ford Fiesta, which was insured by State Farm.  Compl. ¶ 4, 13; ECF No. 11-4 at 2-3.

Plaintiff alleges that State Farm also insured a Ford F-150 pickup truck ("Ford truck"), which Plaintiff sold before acquiring the Ford Fiesta.  Compl. ¶ 18-19; ECF No. 11-4 at 4.  Plaintiff asserts that when he obtained the Ford truck in 2011, he signed a blank selection/rejection form, which State Farm subsequently filled-in out of Plaintiff's presence, that lowered the underinsured motorist ("UIM") benefits for his Ford truck in an amount below the limits of his bodily injury ("BI") benefits.  Compl. ¶ 21-22; ECF No. 11-4 at 4.  *See also* Answer at ¶ 4; ECF No. 11-5 at 4 (admitting Plaintiff's assertion).  Plaintiff contends that (i) State Farm did not offer Plaintiff the opportunity to purchase or reject the option to

purchase UIM limits equal to the BI limits for his Ford Fiesta ($200,000/$500,000 per person/per accident), and (ii) State Farm maintains that the selection/rejection form lowering the UIM limits on his Ford truck applies to the Ford Fiesta.  Compl. ¶ 22, 28; ECF No. 11-4 at 4-5.

On May 5, 2016, State Farm removed the case to this Court.  *See* ECF No. 1.  In its Notice of Removal, State Farm asserts that the Complaint seeks a declaratory judgment solely against State Farm and seeks no relief whatsoever against Mr. Walter.  *Id*. at 3.  State Farm contends that Plaintiff joined Mr. Walter in this declaratory judgment action solely for purposes of destroying diversity and depriving this Court of subject matter jurisdiction.  *Id*.  State Farm thus argues that Mr. Walter has been fraudulently joined and that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship).  *Id*.

## DISCUSSION

Plaintiff moves this Court to decline jurisdiction and remand the case to state court.  Plaintiff first argues that Mr. Walter is a properly joined, non-diverse defendant whose inclusion in this action does not constitute a fraudulent joinder.  ECF No. 11-2 at 2, 4-5.  Next, applying the factors in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942), Plaintiff contends that this Court should decline jurisdiction and remand this case to state court because: (1) the sole basis for the action is for declaratory relief; (2) this action involves a non-

removable parallel proceeding pending in state court; (3) this action involves insurance law issue reserved for the states; and (4) there is no compelling federal interest in this case because the sole basis for removal is diversity of citizenship. ECF No. 11-2 at 1-2.

State Farm contends that Plaintiff fraudulently joined Mr. Walter. State Farm argues that Plaintiff have not stated a claim against Mr. Walter in the instant action.  ECF No. 15 at 4.  State Farm asserts that Plaintiff "seeks only a declaratory judgment determining that State Farm's policy includes UIM limits equal to the BI limits, i.e., $250,000 per person/$500,000 per accident." *Id*. State Farm thus argues that Plaintiff joinder of Mr. Walter must be disregarded under the fraudulent joinder doctrine.  *Id.* at 6.  In addition, State Farm argues that the factors in *Brillhart* weigh against remand in this case.

## I.  FEDERAL JURISDICTION

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute . . . .  It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Here, both parties agree that, if this Court does in fact have jurisdiction, its jurisdiction is pursuant the Declaratory Judgment Act.  *See* ECF No. 12-2 at 7; ECF No. 17 at 7.

"The Declaratory Judgment Act, 28 U.S.C. § 2201, is a procedural statute that provides a federal remedy for litigants seeking a judicial declaration of rights." *Hawaii v. Sekai Kyusei Kyo Izunome Church*, No. CIV 07-00252SOM/BMK, 2009 WL 222989, at *2 (D. Haw. Jan. 30, 2009). It provides, in relevant part: "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28. U.S.C. § 2201(a). The Declaratory Judgement Act does not itself, however, confer federal jurisdiction. *Sekai Kyusei Kyo Izunome Church*, 2009 WL 222989, at *2. "To entertain an action under the Declaratory Judgment Act, a court must have a basis for federal subject matter jurisdiction independent of the Declaratory Judgment Act." *Id.*

Plaintiff's instant action only seeks declaratory judgment. The complaint does not plead any claims arising under federal law. Accordingly, there is no original federal-question jurisdiction. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within the statute [28 U.S.C. § 1331], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

Federal courts also have diversity jurisdiction under 28 U.S.C. § 1332(a) if the amount in controversy exceeds $75,000, exclusive of interest and costs, and "where the citizenship of each plaintiff is different from that of each

defendant"—i.e., complete diversity.  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009).  Here, the parties do not dispute that the amount in controversy exceeds $75,000, exclusive of interests and cost.  On the face of the Complaint, however, this Court lacks diversity jurisdiction because both Plaintiff and Defendant Mr. Walter are residents of the State of Hawaii.  *See* Compl. ¶ 5, 8; ECF No. 11-4 at 2.

"[O]ne exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'"  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  Here, because this Court lacks federal-question jurisdiction, this Court may "decline" jurisdiction as the Plaintiff requests, or "retain" jurisdiction as State Farm requests, only if this Court determines that Mr. Walter has been fraudulently joined.  Otherwise, a finding that joining Mr. Walter was proper would defeat diversity jurisdiction, leaving the Court without jurisdiction to entertain the Motion.  *See e.g., Princess Cruises, Inc.*, 236 F.3d at 1067 ("Because [one of the defendants], like [the plaintiff], is deemed a citizen of Texas for purposes of diversity jurisdiction, its presence in the lawsuit at the time of removal defeated diversity jurisdiction unless it was fraudulently joined."); *Sekai Kyusei Kyo Izunome Church*, CIV 07-00252 SOM/BMK, 2009 WL 222989, at *3 ("This court lacks subject matter jurisdiction, as the Declaratory Judgment Act does not confer independent federal jurisdiction.  Plaintiff do not raise a

6

federal question and do not even allege diversity jurisdiction.").

"The problem with the fraudulent joinder inquiry is that the Court must consider the validity of a claim that defeats diversity, a claim over which the Court has no jurisdiction." *Davis v. Prentiss Properties Ltd., Inc.*, 66 F.Supp.2d 1112, 1114 (C.D. Cal. 1999). "Only by considering the merits of the non-diverse claim, can the Court be assured of jurisdiction over any of the claims in the case." *Id*. Accordingly, because a court "considering a question of fraudulent joinder is unsure of its jurisdiction," the Court must walk a very fine line—"it must consider the merits of a matter without assuming jurisdiction over it." *Id*. *See also B., Inc. v. Miller Brewing Co*., 663 F.2d 545, 554 (5th Cir. 1981) (cautioning that a court must not "lose sight of the important questions of federal jurisdiction" implicated in fraudulent joinder cases).

This Court thus first considers whether Mr. Walter has been "fraudulently joined" before it discusses its recommendations to the district court on whether to "decline" or "retain" jurisdiction.

## II.  FRAUDULENT JOINDER

"Fraudulent joinder is a term of art." *McCabe v. Gen. Foods Corp*., 811 F.2d 1336, 1339 (9th Cir. 1987). The motive for joining a non-diverse defendant is immaterial. *Albi v. St. & Smith Publications*, 140 F.2d 310, 312 (9th Cir. 1944). "Joinder of a non-diverse defendant is deemed fraudulent, and the

defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Morris,* 236 F. 3d at 1067 (quoting *McCabe,* 811 F.2d at 1339) (alterations in original).

There is a general presumption against fraudulent joinder. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). "[T]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Philip Morris USA*, 582 F.3d at 1044 (citing *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568 (5th Cir. 2004)). Notwithstanding this heavy burden, fraudulent joinder can be shown if the defendant can demonstrate, by clear and convincing evidence, "that there is no possibility, based on the pleadings, that plaintiff can state a cause of action against the non-diverse defendant in state court." *Catholic Foreign Mission Soc. of Am., Inc. v. Arrowood Indem. Co.*, 76 F. Supp. 3d 1148, 1156 n.1 (D. Haw. 2014) (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)); *Hamilton Materials, Inc.*, 494 F.3d at 1206 ("Fraudulent joinder must be proven by clear and convincing evidence.").

Although a court may look to evidence outside of the pleadings in determining fraudulent joinder, it must do so in a summary manner. *Unterberg v.*

*Exxon Mobil Corp.*, No. CIV. 14-00181 JMS, 2014 WL 3420779, at *6 (D. Haw. July 10, 2014).  "Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits."  *Id.* (citing *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573–74 (5th Cir. 2004)).  Accordingly, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."  *Id.* (citing *Philip Morris USA*, 582 F.3d at 1045).

Here, Plaintiff's Complaint requests the following relief: (1) a binding declaration that Defendant State Farm must provide UIM benefits under the Ford Fiesta policy in the amount of $250,000 each person/$500,000 each accident; (2) "a binding declaration that Defendant State Farm must pay Plaintiff [UIM] benefits for the value of injuries and damages sustained by Plaintiff up to the limits this Court determines is applicable"; and (3) "reasonable attorneys' fees and expenses in the instant declaratory judgment action."  ECF No. 11-4 at 6.  Plaintiff does not seek any damages against Mr. Walter.  The Complaint alleges only that Mr. Walter "is liable to Plaintiff Ronald Ford for special and general damages . . . as may be permitted by Hawaii law" and that under state law, "Defendant State Farm possesses a subrogation right against Defendant Walter to recover UIM benefits paid to the Plaintiffs [sic] arising out of injuries and damages caused by Defendant Walter."  ECF No. 11-4 at 6; Compl. ¶ 30-31.

Plaintiff nonetheless asserts that he named Mr. Walter as a defendant because Mr. Walter has a direct interest in this case—State Farm's subrogation rights give it the right to recover from Mr. Walter any amounts State Farm pays in UIM benefits.  ECF No. 11-2 at 6.  In its Opposition and at the hearing on the Motion, however, State Farm represents that it had affirmatively waived its rights to subrogation in this matter and would, under no circumstances, pursue Mr. Walter.  *See* ECF No. 11-5.  Plaintiff did not dispute this representation.  This discrete and undisputed fact eliminates Plaintiff's sole reason alleged for including Mr. Walter as a defendant in this action.

Based on the Plaintiff's Complaint and State Farm's representation that it has waived its subrogation rights in this action, this Court finds that Mr. Walter was fraudulently joined because there is no possibility that Plaintiff can state a cause of action against Mr. Walter in this declaratory judgment action in state court.  This Complaint asserts a cause of action only against State Farm, not Mr. Walter.  Accordingly, this Court finds that it has the necessary diversity jurisdiction to consider whether to exercise jurisdiction over Plaintiff's declaratory judgment claims.

## II.  REMAND

The "decision whether to exercise jurisdiction over a declaratory action lies in the sound discretion of the district court."  *Huth v. Hartford Ins. Co.*

*of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002).  "Of course, this discretion is not unfettered."  *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998).  Although not exhaustive, the following factors enunciated in *Brillhart* remain the philosophic touchstone for the district court in deciding whether to exercise jurisdiction over a declaratory judgment action: (1) avoidance of needless determination of state law issues; (2) discouragement of filing a declaratory action as a means of forum shopping; and (3) avoidance of duplicative litigation ("*Brillhart* factors").  *Id*. at 1225.

The Court finds that in light of the factual and legal issues presented in this declaratory action, the *Brillhart* factors weigh in favor of remanding this case to state court.

A.     Needless Determination of State Law Issues

"A 'needless determination of state law' may involve an ongoing parallel state proceeding regarding the 'precise state law issue,' an area of law Congress expressly reserved to the states, or a lawsuit with no compelling federal interest (e.g., a diversity action)."  *Nautilus Ins. Co. v. K. Smith Builders, Ltd*., No. CV 09-00509 JMS/BMK, 2010 WL 346457, at *3 (D. Haw. Jan. 29, 2010) (citing *Cont'l Cas. Co. v. Robsac Indus*., 947 F.2d 1367, 1371-72 (9th Cir. 1991) (*overruled in part on other grounds by Dizol*, 133 F.3d at 1225)).

"The concern in this factor is with unsettled issues of state law, not

fact-finding in the specific case." *Nat'l Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1118 (D. Alaska 1998) (citing *Robsac Indus.*, 947 F.2d at 1371). "When state law is unclear, '[a]bsent a strong countervailing federal interest, the federal court should not elbow its way . . . to render what may be an 'uncertain' and 'ephemeral' interpretation of state law.'" *Allstate Ins. Co. v. Davis*, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006) (alterations in original) (citing *Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir. 1992)).  "Accordingly, at issue for this factor is not merely whether the action raises a state law issue (which is the case for all diversity actions), but rather whether it presents an unsettled state law issue." *Nautilus Ins. Co.*, 2010 WL 346457, at *3.

State Farm argues that this case does not involve unsettled state law issues.  *See* ECF No. 15 at 8.  State Farm asserts that the issues in this case "involve the interpretation of the subject insurance policies and the application of Hawaii insurance law."  *Id*.  State Farm contends that these issues are not "unusually complex," and that "the courts of this district have significant experience resolving coverage matters involving UM and UIM coverage."  *Id*.

Plaintiff argues that this case does indeed require resolution of unsettled questions of state law.  *See* ECF No. 11-2 at 17.  Plaintiff contends that the issues in this case require "interpretation of insurance law based on the policies articulated by the Hawaii legislature."  ECF No. 11-2 at 18.  Plaintiff argues that

resolving the questions of state law in this case "requires more than simply interpreting an insurance contract under general rules of contract construction"; it involves a determination of whether State Farm's actions in this case complies with Hawaiʻi insurance law—a determination better left to Hawaii courts. *Id*. at 19, 21.

The interpretation of Hawaii Revised Statutes ("HRS") Section 431:10C-301, Hawaii's "required motor vehicle policy coverage" statute, is the principal point of contention between the parties in this action. HRS Section 431:10C-301(d) requires an insurer to offer the insured the opportunity to purchase UM and UIM coverage by offering the option to: (1) "stack uninsured motorist coverage and underinsured motorist coverage"; and (2) "select uninsured motorist coverage and underinsured motorist coverage, whichever is applicable, up to but not greater than the bodily injury liability coverage limits in the insured's policy." The offer of UIM or UM coverage must also meet certain conditions. The offer must:

> (A) Be conspicuously displayed so as to be readily noticeable by the insured;
> (B) Set forth the premium for the coverage adjacent to the offer in a manner that the premium is clearly identifiable with the offer and may be easily subtracted from the total premium to determine the premium payment due in the event the insured elects not to purchase the option; and
> (C) Provide for written rejection of the coverage by requiring the insured to affix the insured's signature in a location adjacent to or directly below the offer.

HRS § 431:10C-301(b)(4).

Section 431:10C-301(d) further provides that offers "are to be made when a motor vehicle insurance policy is first applied for or issued. . . .  Once an insured has been provided the opportunity to purchase or reject the coverages in writing under the options, no further offer is required to be included with any renewal or replacement policy issued to the insured."  When a material change is made to an existing policy, however, the resulting policy is not a "renewal or replacement policy"; thus, a new offer of optional UM/UIM coverage is required. *Allstate Ins. Co. v. Kaneshiro*, 93 Haw. 210, 217, 998 P.2d 490, 497 (2000) (holding that changes to no-fault motor vehicle policy, removing husband as named insured and substituting wife as sole named insured after insurer had notice that wife was no longer husband's resident spouse due to their pending divorce, and adding a vehicle to the policy, constituted a material change to the policy issued to husband).

Plaintiff contends that the following unsettled issues of Hawaii insurance law are at issue in this case: (1) whether State Farm's practice of filling in essential policy terms on a pre-signed form is sufficient under Hawaii law; (2) whether a form that is signed before the selection of coverage satisfies the requirements of and policies behind Hawaii Revised Statutes ("HRS") Section 431:10C-301(b)(4)(C); and (3) whether changing the insured vehicle and policy

number on a single-vehicle policy constitutes a "material change" under Section

431:10C-301(d), thus requiring the insurer to provide a new offer to purchase or

reject UIM benefits equal to BI limits. ECF No. 11-2 at 18-21. The Court agrees.

      The only Hawaii appellate decisions providing guidance on the issues

before the court in the instant action are *Mollena v. Fireman's Fund Ins. Co. of

Hawai'i, Inc.*, 72 Haw. 314, 816 P.2d 968 (1991) and *Allstate Ins. Co. v.

Kaneshiro*, 93 Haw. 210, 998 P.2d 490. *Mollena* provides this Court with

guidance on determining the legal sufficiency of a required offer of UIM coverage

and *Kaneshiro* provides this Court with guidance on the inquiry into whether

changes in a no-fault motor vehicle policy are "material." Nonetheless, neither of

these cases squarely deals with the issue of whether State Farm's blank

selection/rejection form, which State Farm subsequently filled-in out of Plaintiff's

presence, that lowered the UIM benefits for Plaintiff's *Ford truck* in an amount

below the limits of his bodily injury ("BI") benefits, was a legally sufficient offer

and rejection of UIM coverage for the *Ford Fiesta*.

      In addition, State Farm's contention that the selection/rejection form

was for the Ford pickup, but nonetheless applied to the Ford Fiesta, presents the

unique question of whether changing vehicles on a single-vehicle policy

constitutes a "material change" requiring the insurer to provide anew to the insured

the opportunity to purchase or reject UIM benefits equal to BI limits on the

changed vehicle.  There is currently no Hawaii case law on this specific issue.

The Court finds that exercising jurisdiction to resolve these issues would require this Court to make a needless determination of state law.  Rather than predicting how the Hawaiʻi Supreme Court would decide the issue, as this Court would do sitting in diversity, the Court finds that Hawaiʻi state courts are best suited to determine the significance of the selection/rejection form and how it relates to Plaintiff's Ford Fiesta policy.  *Keown v. Tudor Ins. Co.*, 621 F.Supp.2d 1025, 1032 (D. Haw. 2008) ("The court finds that it should decline jurisdiction to avoid needlessly determining a state law issue that the Hawaii courts have yet to address.").

The Court is further persuaded that the state court is best situated to decide this issue because: (1) this case involves an ongoing parallel state proceeding; (2) this case involves an area of law expressly reserved to the states; and (3) there is no compelling federal interest.  As discussed above, a needless determination of state law may involve each of the foregoing situations.  This Court discusses each of these seriatim.

First, "[c]ourts should generally decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court unless there are circumstances present to warrant an exception to that rule." *Am. Nat. Fire Ins. Co.*

*v. Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995) (internal quotation marks omitted) (citation omitted*), overruled in part on other grounds by Dizol*, 133 F.3d 1220.  "The Ninth Circuit construes 'parallel actions' liberally."  *Keown*, 621 F.Supp.2d at 1037.  "Underlying state actions need not involve the same parties nor the same issues to be considered parallel."  *Id*.  "'[W]hen an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court,' the actions are considered 'parallel proceedings.'"  *Choy v. Cont'l Cas. Co.*, No. CV 15-00281 SOM/KSC, 2015 WL 7588233, at *4 (D. Haw. Nov. 25, 2015) (alterations in original) (citing *Hungerford*, 53 F.3d at 1017).  *See also Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750, 755 (9th Cir. 1996) ("It is enough that the state proceedings arise from the same factual circumstances.").

Here, the state action and the instant action arise out of the same factual circumstances, i.e., Mr. Walter's collision with Plaintiff.  Accordingly, the state and federal actions constitute "parallel proceedings."  State Farm does not present, nor is this Court able to find, any circumstances present to depart from the general rule that courts should "decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court."  *Hungerford*, 53 F.3d at 1017.  *See e.g. Dizol*, 133 F.3d at 1225 ("Indeed, when other claims are joined with an

action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief."); *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367–68 (9th Cir. 1991) (holding that the retaining federal jurisdiction was proper because the district court already had jurisdiction over plaintiff's removed bad faith lawsuit when the defendant insurer filed its counterclaim for declaratory relief; thus, by adjudicating the declaratory relief counterclaim, the district court avoided piecemeal litigation).

Second, this case involves insurance law, "an area that Congress has expressly left to the states through the McCarran–Ferguson Act." *Robsac Indus.*, 947 F.2d at 1371. "[T]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulations." *Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796, 799 (9th Cir. 1995) (citation omitted), *overruled in part on other grounds by Dizol*, 133 F.3d 1220. Thus, because retaining jurisdiction over the removed action would require this Court to decide unresolved issues of state insurance law, "the better option is to remand this case to the state court." *Choy*, 2015 WL 7588233, at *6.

Third, as explained previously, the sole basis of jurisdiction in this action is diversity of citizenship. Where the sole basis of jurisdiction is diversity of

citizenship, "the federal interest is at its nadir." *Robsac Indus.*, 947 F.2d at 1371.

"Thus, the *Brillhart* policy of avoiding unnecessary declarations of state law is especially strong here." *Id*.

The Court thus finds that the first *Brillhart* factor, the avoidance of needless determination of state law, heavily weighs in favor of declining jurisdiction.

B.     Forum Shopping

The Court finds that the second *Brillhart* factor favors neither party. Plaintiff initiated both the personal injury and declaratory judgment actions in state court.  State Farm simply removed the declaratory action to federal court, as is its right. *See First State Ins. Co. v. Callan Assocs., Inc.*, 113 F.3d 161, 162 (9th Cir.1997) ("Although occasionally stigmatized as 'forum shopping,' the desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III.").  "If there is any forum shopping to be considered here, it cannot be said that one side is at fault more than the other, for neither can be faulted for seeking to litigate issues in the forum of its choice." *Smith v. Lenches*, 263 F.3d 972, 978 (9th Cir. 2001).  Under the circumstances, this factor is a wash.

C.     Duplicative Litigation

The Court finds that the final *Brillhart* factor is also neutral.  "The

Ninth Circuit has found litigation duplicative if the same issues are at stake in both actions." *Benevedes*, 2009 WL 705541, at *4. *See, e.g., Robsac*, 947 F.2d at 1373 (finding declaratory and state actions duplicative because the federal declaratory suit "was virtually the mirror image of the state suit").  Although the issues in the state personal injury action are related and parallel to the instant declaratory judgment action, the actions deal with different state law issues.  Accordingly, the litigation is not duplicative.  This factor neither weighs in favor of exercising jurisdiction nor declining jurisdiction.

> D.      The *Dizol* Factors

         In addition to the *Brillhart* factors, the court may consider a number of additional factors, including:

> 1) whether the declaratory action will settle all aspects of the controversy; 2) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; 3) whether the declaratory action is being sought merely for the purpose of procedural fencing or to obtain a "res judicata" advantage; or 4) whether the use of a declaratory action will result in entanglement between the federal and state court systems.  In addition, the district court might also consider 5) the convenience of the parties; and 6) the availability and relative convenience of other remedies.

("*Dizol*" factors) *Dizol*, 133 F. 3d at 1225 n.5.  Although neither party has discussed any of the foregoing *Dizol* factors in detail, the Court has considered each of these additional factors and finds that none of these significantly weigh in favor of either party except the first factor—whether the declaratory action will

settle all aspects of the controversy.

The federal action for declaratory relief will not settle all aspects of the controversy, which includes the personal injury state action filed by Plaintiff against Mr. Walter. Even if this Court were to assert jurisdiction to determine the issues in this declaratory judgment action, the personal injury action in state court remains. *See e.g., Owners Ins. Co. v. Monte Vista Hotel*, No. CV 09-8095-PCT-MHM, 2010 WL 447343, at *4 (D. Ariz. Feb. 4, 2010) (finding that this consideration weighed in favor of abstention because, even assuming the Court was able to resolve the issue in the declaratory action, the damages in the state tort case would remain outstanding). Accordingly, this factor weighs in favor of declining jurisdiction.

The Court finds that the first *Brillhart* factor—avoidance of needless determination of state law—weighs heavily in favor of declining jurisdiction. In addition, the Court finds that at least one of the *Dizol* factors also favors declining jurisdiction. Because the Court finds that the other two *Brillhart* factors are neutral, on balance, the *Brillhart* and *Dizol* factors favor declining jurisdiction in this action.

## CONCLUSION

In light of the foregoing considerations, the Court FINDS and RECOMMENDS that the district court GRANT Plaintiff Ronald Ford's Motion to

Decline Jurisdiction and Remand Proceedings filed on June 2, 2016.  The Court recommends that this case be remanded to the Circuit Court of the Third Circuit, State of Hawai'i.

        IT IS SO ORDERED.

        DATED:    Honolulu, Hawai'i, August 31, 2016.



   /S/ Kenneth J. Mansfield
Kenneth J. Mansfield
United States Magistrate Judge

*RONALD FORD VS. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ET AL*; CV 16-00220 JMS-KJM; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF RONALD FORD'S MOTION TO DECLINE JURISDICTION AND REMAND PROCEEDINGS